**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

MSP Recovery Claims, Series LLC,
et al.,

                    **Plaintiffs,**

        **-vs-**

The Phoenix Insurance Company,

                    **Defendant**

Case No. 5:19cv00436

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION AND
ORDER**

Currently pending is Defendant Phoenix Insurance Company's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. No. 7.) Plaintiffs MSP Recovery Claims, Series, LLC and Series 16-11-509 filed a Brief in Opposition, to which Defendant replied. For the following reasons, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I.**     **Procedural Background**

On February 27, 2019, Plaintiffs MSP Recovery Claims, Series LLC and Series 16-11-509, LLC (hereinafter referred to collectively as "Plaintiffs") filed a Class Complaint[1] against Defendant Phoenix Insurance Company asserting a private cause of action for double damages under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A). (Doc. No. 1.) The Complaint alleges that Plaintiffs' assignors and the putative Class Members made conditional Medicare payments for

---

[1] The Complaint defines the putative class as follows: "All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, which made payments for a Medicare beneficiary's medical expenses where Defendant: (1) is the primary payer by virtue of having settled a claim with a Medicare beneficiary enrolled in a Medicare Advantage plan; (2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and (3) failed to reimburse Medicare Advantage Organizations, or their assignees, the payments provided for medical items and services related to the claims settled by Defendant." (Doc. No. 1 at ¶ 47.)

medical expenses incurred by its enrollees resulting from injuries sustained in accidents with Defendant's insureds. (*Id*. at ¶ 2.) Plaintiffs allege that Defendant Phoenix became a primary payer responsible for Plaintiffs' assignors and the Class Members enrollees' medical expenses under the MSP Act upon entering into settlements with the enrollees but has "repeatedly failed" to reimburse payments made by Plaintiffs' assignors relating to its enrollees' accident-related medical expenses. (*Id*. at ¶¶ 2-3.)

Phoenix filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on May 20, 2019. (Doc. No. 7.) Plaintiffs filed a Brief in Opposition on June 19, 2019 (Doc. No. 11), to which Phoenix replied on July 3, 2019 (Doc. No. 12).

This matter was re-assigned to the undersigned on June 24, 2019 pursuant to General Order 2019-13.

## II. Factual Allegations

The Class Complaint contains the following factual allegations. On September 22, 2015, J.R. was injured in an accident, as a result of which he/she sustained a variety of injuries and required medical treatment and services. (Doc. No. 1 at ¶ 8-9.) At this time, J.R. was enrolled in Medicare through a plan issued and administered by SummaCare, Inc.[2] (*Id.* at ¶ 7.) J.R.'s medical providers issued a bill for payment of the accident-related medical expenses to SummaCare in the amount of $49,924.27. (*Id.* at ¶ 10.) SummaCare paid $7,437.34. (*Id.*)

---

[2] As discussed *infra*, Part C of Medicare created the program now known as "Medicare Advantage." Under this program, enrollees may obtain their Medicare benefits through private insurers (known as Medicare Advantage Organizations or "MAOs") instead of receiving direct benefits from the government under Medicare Parts A and B. Plaintiffs allege that SummaCare is a Medicare Advantage Organization, or "MAO." (Doc. No. 1 at ¶ 7.)

The tortfeasor responsible for the accident was insured by Defendant Phoenix under a liability insurance policy. (*Id.* at ¶ 8.) J.R. subsequently made a claim against the tortfeasor, which Defendant settled for an undisclosed amount in exchange for a release of all claims. (*Id*. at ¶ 11.) Plaintiffs allege that, as a result of this settlement, "Defendant became a primary payer and subject to liability for J.R.'s accident-related medical expenses." (*Id*.)

Plaintiffs MSP Recovery Claims, Series, LLC and Series 16-11-509, LLC claim that, as a primary payer, Defendant is legally obligated to reimburse conditional Medicare payments made by SummaCare with respect to J.R. (*Id*. at ¶ 3.) Plaintiffs allege that they have the legal right to pursue these claims for reimbursement pursuant to a series of assignment agreements, copies of which are attached to the Complaint. (*Id*. at ¶ 14.) *See also* Doc. Nos. 1-4, 1-5. Specifically, Plaintiffs allege that, on May 12, 2017, SummaCare and MSP Recovery, LLC entered into an "Assignment" and "Recovery Agreement," in which SummaCare irrevocably assigned all rights to recover conditional payments made on behalf of its enrollees to MSP Recovery, LLC.[3] (Doc. No. 1-4 at § 4.1) Thereafter, on June 12, 2017, MSP Recovery, LLC assigned all rights under the Recovery Agreement to "Series 16-11-509, LLC, a series of MSP Recovery Claims, Series LLC." (*Id*. at ¶ 16.) *See* Doc. No. 1-5.

On September 5, 2018, SummaCare sent a letter to MSP Recovery, LLC in which it confirmed that it "has consented to, approved, and ratified the assignment of Recovery Agreement executed on June 12, 2017 by MSP Recovery, LLC, and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claim Series, LLC or any of its designated series, including but not limited to, Series 16-11-509." (Doc. No. 1-6.)

---

[3] MSP Recovery, LLC is not a party to this action.

3

After Defendant failed to submit reimbursement for J.R's medical expenses, Plaintiffs MSP Recovery Claims, Series LLC and Series 16-11-509, LLC filed the instant action against Defendant Phoenix on February 27, 2019. (Doc. No. 1.)

## III.    Standards of Review

Defendant moves for dismissal on the basis of both lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816–17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[ ] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F.Supp.3d 1076, 1081-1082 (S.D. Ohio 2019).

A factual attack, on the other hand, "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks

a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

## IV.    Analysis

Defendant argues Plaintiffs' claim should be dismissed for several reasons.  First, Defendant argues that Plaintiffs are estopped from bringing the instant action because four federal courts have decided that Plaintiffs do not have standing to assert a claim under 42 U.S.C. §1395y(b)(3)(A) on behalf of a Medicare Advantage Organization ("MAO").  (Doc. No. 7.)  Second, Defendant asserts that the May 12, 2017 Recovery Agreement is too vague and contradictory to demonstrate that Plaintiffs have standing as a matter of law.  (*Id.*)  Third, Defendant argues that the Complaint should be dismissed because MAOs do not have a private right of action under the MSP Act for recovery of conditional payments.  (*Id.*)  Fourth, Defendant maintains the Complaint fails to state a claim upon which relief may be granted because Plaintiffs fail to allege facts showing that SummaCare made a conditional payment that has not been reimbursed.  (*Id.*)  Finally, Defendant argues that Plaintiffs' claim fails because the Complaint does not allege that Defendant "failed" to reimburse a MAO.  (*Id.*)

Prior to reaching the merits of the parties' arguments, the Court will briefly set forth the statutory and regulatory background relevant to Plaintiffs' claims.

### A.    Statutory and Regulatory Background

"Medicare is a federal health insurance program that provides health insurance benefits to people sixty-five years of age or older, disabled people, and people with end-stage renal disease." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008).  Parts A and B of the Medicare Act create, describe, and regulate traditional fee-for-service Medicare provisions, which are

administered by the Centers for Medicare & Medicaid Services ("CMS"). *See In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 685 F.3d 353, 357 (3rd Cir. 2012). Part C creates the program now known as Medicare Advantage, under which Medicare-eligible persons may elect to obtain their Medicare benefits through private insurers (also known as Medicare Advantage Organizations or MAOs) instead of receiving direct benefits from the government under Parts A and B. *Id. See also Humana Medical Plan, Inc v. Western Heritage Insurance Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016).

Initially, "Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). In 1980, in an effort to curb the rising costs of Medicare, Congress enacted the Medicare Secondary Payer Act ("MSP"), which is located in Part E of the Medicare Act. *See* 42 U.S.C. § 1395y(b). Under this Act, when both Medicare and a private plan would cover a Medicare beneficiary's expenses, Medicare is the "secondary payer" and the private plan is the "primary payer." *Bio-Med. Applications of Tenn., Inc.*, 656 F.3d at 281. As the Sixth Circuit explained, "[t]he primary payer is responsible for paying for the patient's medical treatment; however, if Medicare expects that the primary payer will not pay promptly, then Medicare can make a 'conditional payment' on its behalf and later seek reimbursement." *Id. See* 42 U.S.C. § 1395y(b)(2)(B)(i). If Medicare makes a conditional payment, the primary plan must reimburse the Medicare Trust Fund. 42 U.S.C. § 1395y(b)(2)(B)(ii). If the primary plan fails to reimburse the Fund, "the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health

plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395yb(2)(B)(iii). The United States may then, "in accordance with paragraph (3)(A) collect double damages against any such entity." *Id.*

Paragraph (3)(A) of the MSP Act, entitled "Private cause of action," provides as follows:

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). Subparagraph (1) relates to group health plans and is not relevant to the issues presented herein. Subparagraph (2)(A) provides that Medicare may not pay when a primary plan is expected to pay, "except as provided in subparagraph [2](B)," which in turn provides that when the primary plan "has not or cannot reasonably be expected" to pay "promptly," "the Secretary" may make a conditional payment. *See* 42 U.S.C. §§ 1395y(b)(2)(A) and (B). *See also Michigan Spine & Brain Surgeons, PLLC v. State Farm Mutual Automobile Ins. Co.*, 758 F.3d 787, 792 (6th Cir. 2014).

Interpreting the above, courts have found that "[t]he Medicare Statute thus creates two separate causes of action allowing for recovery of double damages where a primary payer fails to cover the costs of medical treatment." *In re Avandia*, 685 F.3d at 359. When Medicare makes a conditional payment and the primary payer does not reimburse it, the United States may bring suit pursuant to § 1395y(b)(2)(B)(iii). In addition, a private cause of action exists pursuant to § 1395y(b)(3)(A) when a primary payer fails to make required payments.

The Medicare Advantage Act, commonly known as Part C, was enacted in 1997, seventeen years after the enactment of the MSP Act. *Humana Medical Plan, Inc.*, 832 F.3d at 1235. "Congress's goal in creating the Medicare Advantage program was to harness the power of private

sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." *In re Avandia*, 685 F.3d at 363 (citing H.R. Rep. No. 105-217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205-06 (Conf. Rep.)). Under the Medicare Advantage program, a private insurance company, operating as a MAO, administers the provision of Medicare benefits pursuant to a contract with CMS.[4] Part C includes a reference to the MSP, entitled "Organization as secondary payer," which states as follows:

> Notwithstanding any other provision of law, [a MAO][5] may (in the case of the provision of items and services to an individual under [an MA] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4). In several cases, a MAO has contended that § 1395w-22(a)(4) (sometimes called the MAO "right-to-charge" provision) creates an implied federal cause of action for a MAO to recover secondary payments. However, several courts have rejected this argument.

---

[4] As the Third Circuit explained: "CMS pays an MAO a fixed amount for each enrollee, per capita (a "capitation"). The MAO then administers Medicare benefits for those enrollees and assumes the risk associated with insuring them. MAOs … are thus responsible for paying covered medical expenses for their enrollees. Part C allows MAOs some flexibility as to the design of their MA plans. The MAO is required to provide the benefits covered under Parts A and B to enrollees, but it may also provide additional benefits to its enrollees. § 1395w–22(a)(1)–(3)." *In re Avandia*, 685 F.3d at 357-358.

[5] The statutory text refers to MAOs as "Medicare+Choice" organizations. For the sake of consistency and simplicity, this opinion will refer to these organizations as "MAOs" throughout. *See In re Avandia*, 685 F.3d at fn 8 (noting that, although the statute refers to Medicare+Choice organizations, the term MAO is the "contemporary terminology") (citing Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108–173, 117 Stat. 2176, 42 U.S.C. § 1395w–21 note, which provides that "[T]he Secretary shall provide for an appropriate transition in the use of the terms 'Medicare+Choice' and 'Medicare Advantage' (or 'MA') in reference to the program under part C of title XVIII of the Social Security Act.").

*See, e.g., Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1153, 1154 (9th Cir. 2013) (explaining that the MAO right-to-charge provision "does not create a federal cause of action in favor of a MAO"); *Care Choices HMO v. Engstrom*, 330 F.3d 786, 790 (6th Cir. 2003) (reaching a similar conclusion as to 42 U.S.C. § 1395mm(e)(4), which addresses secondary payment by Medicare-substitute HMOs).

### B.     Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction because Plaintiffs do not have standing.  (Doc. No. 12-1.)  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'"  *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (alteration in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, (2006)).  The case-or-controversy requirement is satisfied only where a plaintiff has standing.  *See Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal quotation marks and citations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id*. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 41–42 (1976)). "Third, it must be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561(internal quotation marks and citation omitted).

Here, Defendant argues that Plaintiffs lack standing because (1) four other federal courts have "addressed the same issue before this Court and determined that Plaintiff MSP Recovery Claims, Series, LLC does not have standing to assert a claim under § 1395y(b)(3)(A);" and (2) the assignments at issue are "too vague and contradictory to show Plaintiffs' standing as a matter of law." (Doc. No. 7.)  The Court will address each of these arguments in turn.

### 1.    Collateral Estoppel

Defendant first asserts that the instant action should be dismissed on the basis of collateral estoppel. (Doc. No. 7 at pp. 7-9.)  Citing to four, unreported district court decisions from Florida and Illinois,[6] Defendant argues Plaintiffs herein "had a full and fair opportunity to litigate their standing to bring claims on behalf of MAOs multiple times [in those cases] and lost." (*Id*.)  Defendant acknowledges that Series 16-11-509 was not a party to the Florida and Illinois actions but argues that collateral estoppel nonetheless applies because Series 16-11-509 is an "agent" or "proxy" for Plaintiff MSP Recovery Claims, Series LLC, which was a party to those actions. (*Id*.)  Thus, Defendant argues Plaintiff Series 16-11-509 is bound by the previous court decisions, despite the fact that it was not a named party. (*Id*.)

Plaintiffs argue that collateral estoppel does not apply because, in each of the four cases cited by Defendant, "the Courts were presented with different facts, including different assignment

---

[6] *See MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.,* 2018 WL 1953861 (S.D. Fla. Apr. 25, 2018); *MSP Recovery Claims, Series LLC v. Travelers Casualty and Surety Co*., 2018 WL 3599360 (S.D. Fla. June 21, 2018); *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc*., 2019 WL 1490531 (M.D. Fla. April 4, 2019); *MAO-MSO Recovery II, LLC, et al. v. State Farm Mutual Auto. Ins. Co*., 2018 WL 2392827 (C.D. Ill. May 25, 2018), *aff'd as modified by* 935 F.3d 573 (7th Cir. 2019).

agreements involving different types of entities as assignees, before ultimately deciding a different issue that is inapplicable to this case: whether non-MAO entities have standing to sue under the MSP Act." (Doc. No.11 at p. 3.) Plaintiffs assert that "Defendant cannot shoe-horn this case in with those inapplicable final rulings." (*Id*. at p. 4.)

In response, Defendant maintains that collateral estoppel nonetheless applies because, in the four cases at issue, Plaintiffs pled that their assignors were MAOs. (Doc. No. 12 at pp. 6-7.) Defendant further argues that the fact that the Florida and Illinois cases did not involve a SummaCare assignment is not relevant because "Plaintiffs' approach in the prior cases was to put only a 'representative' assignment before the prior courts, one that stood in for all of their alleged MAO assignments, including the SummaCare assignment they rely on here." (*Id*. at p. 7.) Thus, Defendant asserts that "Plaintiffs' failure to establish standing broadly on behalf of MAOs using a 'representative' assignment estops them from relitigating the issue again in this case." (*Id.* at p. 8.)

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Part of that federal common law is the doctrine of issue preclusion. "The doctrine bars repetitive litigation of the same issue between the same parties: if two parties actually litigated an issue in a prior case, and a court necessarily decided the issue pursuant to entry of a final judgment, then the losing party cannot relitigate the issue against the winner in a later case." *Amos v. PPG Industries, Inc*., 699 F.3d 448, 451 (6th Cir. 2012) (citing *Taylor*, 553 U.S. at 892.) *See also Covenant Medical Center, Inc. v. Burwell*, 603 Fed. Appx. 360, 363 (6th Cir. 2015). For the doctrine to apply, however, the loser must have had a "full and fair opportunity" to litigate the issue in the prior case. *Id*. (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). *See also B&B Hardware, Inc. v. Hargis Industries, Inc*. 575 U.S. 138 (2015) ("This Court has long

recognized that 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'") (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 354 (1877)).

For the following reasons, the Court rejects Defendant's argument that the instant action is barred by the doctrine of collateral estoppel. The courts in the four cases cited by the Defendant considered issues that are entirely different from those that are presently before this Court. Specifically, in the Florida and Illinois cases, the courts found that the MSP plaintiffs lacked standing because the original assignors were not MAOs or direct healthcare providers and, therefore, did not have any assignable rights to recovery under § 1395y(b)(3)(A). *See Auto-Owners Ins. Co.,* 2018 WL 1953861 at * 5 (finding that assignor HFAP was not a MAO and assignor Verimed was neither a MAO or direct healthcare provider and, therefore, neither of these entities had standing to assign claims under § 1395y(b)(3)(A)); *Travelers Casualty and Surety Co.*, 2018 WL 3599360 at * 3 (finding that assignor HFAP was not a MAO and, therefore, had no standing under § 1395y(b)(3)(A)); *State Farm*, 2018 WL 2392827 at * 4-5 (same); *QBE Holdings*, 2019 WL 1409531 at * 3-4 (finding MSP plaintiffs lacked standing because the actual assignor HFAP was not a MAO). The courts' rulings were predicated on a finding that, in order to have standing under § 1395y(b)(3)(A), a plaintiff (or its assignor) must be (1) a MAO who has made a conditional payment for health care services to a Medicare beneficiary; (2) a Medicare beneficiary whose healthcare services were paid by Medicare; or (3) a direct health care provider who has not been fully paid for services provided to a Medicare beneficiary. Because neither the plaintiffs or the original assignors in those cases fell into one of these three categories, the courts found the MSP plaintiffs lacked standing to assert claims under § 1395y(b)(3)(A) and granted defendants' motions to dismiss on that basis.

In the instant case, Defendant does not dispute that Plaintiffs' assignor, SummaCare, is a MAO. Thus, the rulings in *Auto-Owners, Travelers, State Farm*, and *QBE Holdings* are simply not relevant to the instant case. Indeed, Defendant makes no valid argument that the courts' decisions in those cases have any bearing on the specific issues raised in Defendant's Motion; i.e., whether the assignment agreement herein is void for vagueness; whether a MAO has standing under § 1395y(b)(3)(A) as a matter of law in this Circuit; and/or whether this action should be dismissed because Plaintiffs failed to allege facts showing that a conditional payment has not been reimbursed. It is clear from this Court's review of the *Auto-Owners, Travelers, State Farm*, and *QBE Holdings* decisions that the issues raised by Defendant in its Motion were not actually litigated or decided in those cases.

Thus, the Court finds that the doctrine of collateral estoppel does not apply. This argument in support of Defendant's Motion is without merit and denied.

### 2. Validity of the Assignment

Defendant next argues that this Court lacks subject matter jurisdiction because of alleged defects in the assignment agreement. (Doc. No. 7 at p. 9.) First, Defendant asserts that "the only named Plaintiff that potentially has had rights assigned to it is Series 16-11-509" and, therefore, "Plaintiff MSP Recovery Claims, Series LLC should be dismissed on that basis alone." (*Id*. at p. 10.) Second, Defendant argues the description of the claims that are purportedly assigned by the May 2017 Recovery Agreement is void for vagueness. (*Id*. at pp. 10-11.)

Prior to reaching the merits of Defendant's arguments, the Court first addresses the proper standard of review. As noted above, the standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge

to subject matter jurisdiction. *Wayside Church,* 847 F.3d at 816–17. Here, Defendant asserts that it is raising a factual challenge to jurisdiction with respect to its argument regarding the validity of the assignments at issue. (Doc. No. 12 at p. 9.) As set forth *supra*, such a challenge raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Id.* at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). When a court considers a factual attack to jurisdiction, no presumptive truthfulness applies to factual allegations in the Complaint. *See U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). *See also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts."). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction by a preponderance of the evidence. *See Ferrero v. Henderson*, 244 F.Supp.2d 821, 826 (S.D. Ohio 2002).

### a.      Chain of Assignments

Defendant first asserts that Plaintiff MSP Recovery Claims, Series LLC does not have standing to assert any claims in this action because it is not in the chain of assignments from SummaCare. (Doc. No. 7 at p. 10.) Plaintiffs disagree, arguing that SummaCare assigned its rights to MSP Recovery, LLC, which in turn assigned its rights to Plaintiff Series 16-11-509, LLC, which then entered into a limited liability agreement with Plaintiff MSP Recovery Claims, Series LLC allowing it to pursue the action in its own name or in the name of its designated series. (Doc. No. 11 at p. 5.) In response, Defendant argues that "Plaintiffs' reference to an undisclosed 'limited liability

company agreement' that allegedly gives MSP Recovery standing to sue on behalf of its subsidiary is not sufficient to overcome this factual challenge to standing and does not make sense given that both entities purport to be plaintiffs in this case." (Doc. No. 12 at p. 11.)

The documents attached to the Complaint reveal the following. On May 12, 2017, SummaCare Inc. executed an "Assignment" and "Recovery Agreement," pursuant to which it assigned its legal rights to recover certain payments for the provision of health care services to "MSP Recovery, LLC." (Doc. No. 1-4.) As Defendant correctly notes, "MSP Recovery, LLC" is not a party to the instant action. On June 12, 2017, however, "MSP Recovery, LLC" entered into an Assignment Agreement with "Series 16-11-509, LLC, a series of MSP Recovery Claims, Series LLC." (Doc. No. 1-5.) This Assignment Agreement provides, in relevant part, as follows:

> KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated May 12, 2017, by and among SummaCare, Inc., an Ohio corporation (the "Client"), and MSP Recovery, LLC, a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. *** The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

(Doc. No. 1-5.)

Subsequently, on September 5, 2018, SummaCare sent a letter to MSP Recovery, LLC in which it "confirm[ed], pursuant to the Recovery Agreement, that Summacare, Inc, has consented to, approved, and ratified the assignment of the Recovery Agreement executed on June 12, 2017 by MSP Recovery, LLC, and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claims Series, LLC or any of its designated series, including but not limited to, Series 16-11-509." (Doc. No. 1-6.)

In the Complaint, Plaintiffs further allege that Plaintiff MSP Recovery Claims, Series LLC has a "limited liability company agreement" that provides for the establishment of one or more designated Series. (Doc. No. 1 at ¶ 41.) Specifically, Plaintiffs allege as follows:

> 42.    MSP Recovery Claims, Series LLC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of MSP Recovery Claims, Series LLC and pursuant to MSP Recovery Claims, Series LLC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by the MSP Recovery Claims, Series LLC. MSP Recovery Claims, Series LLC may receive assignments in the name of MSP Recovery Claims, Series LLC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, the MSP Recovery Claims, Series LLC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by the MSP Recovery Claims, Series LLC in its own name or it may elect to bring suit in the name of its designated series.

> 43. MSP Recovery Claims, Series LLC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSP Recovery Claims, Series LLC.

(Doc. No. 1 at ¶¶ 42, 43.) Plaintiffs do not attach a copy of the "limited liability company agreement" referenced above to either the Complaint or their Brief in Opposition to Defendant's Motion to Dismiss. Nor do Plaintiffs identify the signatories to this alleged limited liability company agreement or state the date upon which it was executed.

Applying Delaware law, courts have held that "[a] 'series' entity is similar to a corporation with subsidiaries, *see CML V, LLC v. Bax*, 6 A.3d 238, 251 (Del. Ch. 2010), and parent corporations lack standing to sue on behalf of their subsidiaries, *see Elandia Int'l, Inc. v. Koy*, 09-20588-Civ, 2010 WL 2179770, at *5 (S.D. Fla. Feb. 22, 2010)." *MSP Recovery Claims, Series LLC v. USAA General Indemnity Company*, 2018 WL 5112998 at * 12 (S.D. Fla. Oct. 19, 2018). *See also MSP Recovery Claims, Series LLC v. New York Central Mutual Fire Insurance Company*, 2019 WL 4222654 at * 6 (N.D. N.Y. Sept. 5, 2019).[7]

As Defendants correctly note, several courts have reviewed assignments nearly identical to the ones at issue herein and rejected arguments that such assignments confer standing on MSP Recovery Claims, Series LLC to sue on behalf of a Series entity. *See USAA General Indemnity Company*, 2018 WL 5112998 at * 12; *New York Central Mutual Fire Insurance Company*, 2019 WL 4222654 at * 6. Here, Plaintiffs attempt to avoid dismissal by alleging in the Complaint that MSP Recovery Claims, Series LLC has standing by virtue of the limited liability agreement between itself and Series 16-11-509. While this allegation would have been sufficient had Defendant asserted a facial challenge to jurisdiction, Defendant herein has clearly stated that it is raising a *factual* challenge to subject matter jurisdiction. Thus, the Court is not constrained to accept the allegations in the

---

[7] *See also* 6 Del.C. § 18-215(a) (providing that "[a] limited liability company agreement may establish or provide for the establishment of 1 or more designated series of members, managers, limited liability company interests or assets. Any such series may have separate rights, powers or duties with respect to specified property or obligations of the limited liability company or profits and losses associated with specified property or obligations, and any such series may have a separate business purpose or investment objective."); 6 Del.C. § 18-215(b)(1) (providing that: "A protected series may carry on any lawful business, purpose or activity, whether or not for profit, with the exception of the business of banking as defined in § 126 of Title 8. Unless otherwise provided in a limited liability company agreement, a protected series shall have the power and capacity to, in its own name, contract, hold title to assets (including real, personal and intangible property), grant liens and security interests, and sue and be sued.").

Complaint as true, and Plaintiffs must come forward with evidence to demonstrate the existence of subject matter jurisdiction.

Plaintiffs have failed to do so. Although presumably it would have been simple for Plaintiffs to provide this Court with a copy of the limited liability agreement at issue, Plaintiffs have neither attached it to the Complaint or provided it in response to Defendant's Motion. Consequently, the Court is unable to evaluate the date, signatories, and/or terms of the agreement in order to satisfy itself that MSP Recovery Claims, Series LLC has standing to sue under the May 2017 Assignment and Recovery Agreement. The Court therefore finds that Plaintiffs have failed to carry their burden of demonstrating subject matter jurisdiction with respect to Plaintiff MSP Recovery Claims, Series LLC. Defendant's Motion is granted to the extent it seeks dismissal of Plaintiff MSP Recovery Claims, Series LLC from the instant lawsuit.

### b. Whether the Recovery Agreement is void for vagueness

Defendant next argues that "the Assignment Agreements are too vague to establish standing to bring the precise claim at issue." (Doc. No. 7 at p. 10.) Defendant notes that Section 4.1 of the Assignment excludes "those claims previously identified by other vendors currently under contract with [SummaCare]." (*Id*. at p. 11.) Defendant asserts that this language "shows that an undefined group of claims was withheld from the assignment of 'all' claims," making it "impossible for the Court to determine that SummaCare's claim with respect to J.R. has been assigned to Plaintiffs rather than withheld." (*Id*.) Thus, Defendant argues that dismissal is warranted because "Plaintiffs have not demonstrated that they have been assigned the claim they purport to pursue." (*Id*.)

Plaintiffs argue that the assignments "are unambiguously clear" because they exclude a "clearly identifiable class of claims: those claims that were being brought or had been assigned by

19

SummaCare (or another entity contracted with SummaCare) as of May 17, 2017." (Doc. No. 11 at p. 6.) Plaintiffs maintain that, with respect to claims that SummaCare (or a contracting entity) had already assigned, "a reasonable inference is that before May 17, 2017, SummaCare had not assigned to anyone claims in this litigation." (*Id.*) As to claims that were already being pursued as of May 17, 2017, Plaintiffs argue that "if Phoenix knew of any such claims being pursued under the MSP Act by either SummaCare or an entity contracted with SummaCare, it certainly did not mention any such claims." (*Id.*) Plaintiffs argue that "the exclusionary language therefore does not cast any doubt on SummaCare's intent of the assignment agreement." (*Id.*)

In response, Defendant asserts that "Plaintiffs must establish with competent evidence that the claims in this case are not excluded from the assignment." (Doc. No. 12 at p. 9.) Defendant argues that, at a minimum, Plaintiffs should have produced an affidavit from a witness with knowledge to establish standing with respect to this issue. (*Id.*)

"An assignment is a transfer to another of all or part of one's property in exchange for valuable consideration." *W. Broad Chiropractic v. Am. Family Ins.*, 912 N.E.2d 1093, 1095 (Ohio 2009) (citing *Hsu v. Parker*, 688 N.E.2d 1099 (Ohio App. 1996). Under Ohio law, an assignment is a contract and thus, principles of contract interpretation apply. *See, e.g., Cadle v. D'Amico*, 66 N.E.3d 1184, 1188 (Ohio App. 7th Dist. 2016). It is basic contract law that to have an enforceable contract, there must be a meeting of the minds of the parties to the contract. *Alligood v. Procter & Gamble Co.*, 594 N.E.2d 668, 669 (Ohio App. 1st Dist. 1991). "A valid contract must also be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." *Id. See also Cairelli v. Brunner*, 2016 WL 4480361 at * 6 (Ohio App. 10th Dist. Aug. 25, 2016); *Tekfor, Inc. v. SMS Meer Service, Inc.*, 2014 WL

5456525 at * 6 (N.D. Ohio Oct. 27, 2014).  When reviewing a contract, the court's primary role is to

ascertain and give effect to the intent of the parties.  *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*,

714 N.E.2d 898 (Ohio 1999).

Here, the May 12, 2017 Assignment provides, in relevant part, as follows:

> Client hereby irrevocably assigns, transfers, and sets over to MSP Recovery, and any
> of its successors and assigns, for purposes of collection, any and all of Client's
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, including but not limited to the
> Medicare Secondary Payer Act, and any and all rights (including, but not limited to,
> subrogation) to pursue and/or recover monies for Client that Client had, may have had,
> or has asserted against any party in connection with the Claims and all rights and
> claims against primary payers and/or third parties that may be liable to Client arising
> from or relating to the Claims, including claims under consumer protection statutes
> and laws, and all information relating thereto, for claims payments made for
> or on behalf of beneficiaries, members and enrollees arising from dates of service
> beginning January 1, 2009 up to and including May 12, 2017, all of which shall
> constitute the "Assigned Claims," excluding those claims previously identified by
> other vendors currently under contract with Client. The transfer, grant, right, or
> assignment of any and all of Client's right, title, ownership, interest and entitlements
> in and to the Assigned Claims shall remain the confidential and exclusive property of
> MSP Recovery or its assigns. This assignment is irrevocable and absolute.

(Doc. No. 1-4.)  The Recovery Agreement contains similarly broad assignment language and also

expressly references the MSPA, providing that "all claims that have been or can be identified by MSP

Recovery as being recoverable pursuant to any contractual, statutory, equitable or legal basis, whether

state or federal (*including the Medicare Secondary Payer Act*) and whether arising as a Part A, B or

D claim(s) shall be deemed Assigned Claims."  (*Id*. at ¶1.1) (emphasis added).

For the following reasons, the Court finds that the May 2017 Assignment and Recovery

Agreement are not so vague as to deprive Plaintiffs of standing.  As an initial matter, the Court rejects

Defendant's argument that the Agreements are too vague to establish standing with regard to the J.R.

exemplar claim.  The language cited above demonstrates a clear intent to effectuate an assignment of

claims, including claims under the MSPA. Moreover, the assignment provision further defines the universe of assigned claims to those "for payments made for or on behalf of beneficiaries, members, and enrollees arising from dates of service beginning January 1, 2009 up to and including May 12, 2017." (Doc. No. 1-4 at PageID# 36.) Here, the Complaint alleges that J.R.'s claim arises under the MSPA and is for services rendered between September and December 2015. (Doc. No. 1 at ¶ 9.) In addition, Plaintiffs expressly allege in the Complaint that they "have the legal right to pursue this MSP Act claim [i.e., the J.R. claim] on behalf of SummaCare pursuant to a series of valid assignment agreements." (*Id.* at ¶ 14.) Taken as a whole, the Court finds Plaintiffs have sufficiently demonstrated standing with respect to the J.R. exemplar claim.

Defendant also appears to assert that the Agreements are insufficient because the exclusionary language makes it impossible to identify additional claims that may be encompassed by the assignment of MSPA claims. While the Court understands Defendant's concern, the Court finds that the exclusionary language does not render the assignment so vague as to render it an invalid contract or otherwise deprive this Court of subject matter jurisdiction. As discussed above, by its plain language, the agreement demonstrates a clear intent to assign MSPA claims arising between January 2009 and May 2017. The parties will be able to more specifically define, through discovery, the exact universe of claims that Plaintiffs believe may fall within the purview of the assignment. If Plaintiffs are unable to do so, Defendant may, of course, revisit this issue at later stages in the proceedings.

### C. Failure to State a Claim upon which Relief may be Granted

As noted *supra*, Defendant also seeks dismissal under Rule 12(b)(6). Specifically, Defendant argues the Complaint should be dismissed because (1) MAOs do not have a private right of action

under the MSPA; and (2) Plaintiffs fail to allege facts showing a conditional payment that has not been reimbursed. The Court will address each of these arguments in turn.

### 1. Private Right of Action

As noted above, the Complaint in this action sets forth one claim; i.e. a private cause of action under 42 U.S.C. § 1395y(b)(3)(A). (Doc. No. 1 at ¶¶ 57-67.) Defendant argues that this claim fails as a matter of law because neither Plaintiffs nor SummaCare have a private cause of action under the plain text of the MSPA. (Doc. No. 7 at pp. 12-16.) Citing cases from the Sixth and Ninth Circuits, Defendant argues that Plaintiffs have no private right of action under § 1395y(b)(3)(A) because "SummaCare is not the Secretary, and the Medicare Trust Fund is not being preserved through this action" and, therefore, "SummaCare (or Plaintiffs standing in its shoes) cannot seek reimbursement for itself" under that statute. (*Id.* at p. 13.) Defendant acknowledges that the Third and Eleventh Circuits have concluded that MAOs do have a private right of action under § 1395y(b)(3)(A), but argues that decisions from those Circuits are "wrongly decided" and inconsistent with Sixth Circuit precedent. (*Id.* at p. 14.)

Plaintiffs argue that Defendant's position on this issue "is at odds with the rulings of every court to have considered the question, including the Third and Eleventh Circuits and multiple district courts within the Sixth Circuit." (Doc. No. 11 at pp. 7-8.) Plaintiffs further assert that Defendant's reliance on the Sixth and Ninth Circuit decisions cited in its Motion is misplaced, as those Circuits have not addressed the specific question of whether § 1395y(b)(3)(A) provides a private right of action to MAOs. (*Id.* at p. 9-10.)

In response, Defendant maintains that "[t]he plain language of the MSP Act creates a private right of action to recover conditional payments by the Secretary," a MAO is not the Secretary, and

therefore a MAO cannot seek payment or reimbursement in accordance with the statute. (Doc. No. 12 at p. 12.) Defendant further asserts that "the background of the Medicare insurance program, including Medicare Advantage, confirms that Congress never intended conditional payments by MAOs to be the subject of the private cause of action." (*Id.* at p. 13.) Rather, Defendant argues that "Congress gave MAOs only the same rights that HMOs have had since 1982 and the Sixth Circuit has said are less extensive than the rights given to the Secretary." (*Id*. at p. 14.) In other words, Defendants asserts that MAOs (like HMOs) have only a contractual right to reimbursement, and not a federal statutory cause of action to recover conditional payments. (*Id.*)

The Court's review of relevant Sixth Circuit authority reveals that that court has not directly addressed the question of whether § 1395y(b)(3)(A) provides a private right of action for MAOs for double damages. Instead, the Sixth Circuit has considered the separate question of whether the private cause of action provision of § 1395y(b)(3)(A) permits medical service providers to recover payment for medical services from a group health plan designated as a primary payer, when the group health plan denied payment on behalf of an enrollee because the enrollee was eligible for Medicare. In *Bio–Med. Applications of Tenn., Inc. v. Cent. States Health and Welfare Fund*, 656 F.3d 277, 294 (6th Cir.2011), the court found that it did. In so holding, the court interpreted the phrase "in accordance with paragraphs (1) and (2)(A)" contained in § 1395y(b)(3)(A) to mean that a plaintiff seeking to recover against a group health plan must show that the group health plan violated the provisions of both § 1395y(b)(1) and § 1395y(b)(2)(A). *Id.* at 285 ("But the private cause of action uses the conjunctive: it requires that the primary plan fail to make payment 'in accordance with paragraphs (1) and (2)(A).'") (quoting 42 U.S.C. § 1395y(b)(3)(A))).

The Sixth Circuit later found § 1395y(b)(3)(A) to be ambiguous with respect to the statutory obligations of primary payers that are not group health plans. *Michigan Spine & Brain Surgeons*, 758 F.3d at 792. As the court in *Michigan Spine* explained:

> On the one hand, paragraph (1), "Requirements of group health plans," notes that group health plans may not take Medicare eligibility into account, and subparagraph (2)(A) indicates that only primary plans that are group health plans need abide by the group health plan requirements in paragraph (1). On the other hand, subparagraph (3)(A), the private cause of action, seems to require that all primary plans-group and non-group health plans alike-abide by the group health plan requirements listed in paragraph (1).

*Id.* Therefore, the court deferred to the interpretation of the statute contained in regulations promulgated by CMS. *Id.* at 792–93 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 842–45 (1985)). In doing so, the court concluded that a plaintiff seeking to recover against a primary payer that is not a group health plan need only show that the primary payer failed to comply with its obligation to pay under § 1395y(b)(2)(A). *Id.* Thus, the court held that a medical service provider had a federal right of action to recover payment for services rendered to a person covered by an automobile insurance policy, when the automobile insurance policy made the insurance company a primary payer under § 1395y(b)(2)(A). *Id.*

While the Sixth Circuit has considered this aspect of the MSP Act in some detail, it has not considered the question presented by this case: whether § 1395y(b)(3)(A) gives a MAO (rather than a medical service provider) a right of action to recover from a primary payer when the MAO has made medical payments that should have been made by the primary payer. The Third and Eleventh Circuits, however, have considered this precise issue and found that it does. In *In re Avandia*, the Third Circuit exhaustively reviewed the relevant statutory text and framework, as well as legislative history, to find that § 1395y(b)(3)(A) unambiguously creates a private right of action for a MAO. *In*

*re Avandia*, 685 F.3d at 357-366. Specifically, the court explained that §1395y(b)(3)(A) "is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer." *Id.* at 359. Notably, in reaching this conclusion, the court rejected the very argument raised by Defendant Phoenix herein, that the scope of § 1395y(b)(3)(A) is limited by its reference to paragraphs (b)(1) and (2)(A):

> The MSP private cause of action provision allows for damages where the primary plan has failed to pay "in accordance with paragraphs (1) and (2)(A)." *Id.* Paragraph (2)(A), in turn, consistently refers to payments "under this subchapter." [footnote omitted] § 1395y(b)(2)(A). * * *

> . . . Humana argues that because "subchapter" refers to the Medicare Act as a whole, and not in particular to Parts A or B under which the government provides benefits directly to enrollees, payments made by private providers under Parts C or D are also covered. Humana supports this assertion by highlighting other places in the Medicare Act where Congress intentionally limited the applicability of a provision to payments made under particular Parts of the Medicare Act. (Appellants' Br. 23.) These provisions refer specifically to "payment made under part A or part B of this subchapter," § 1395y(a), or payment made "under Part B of this subchapter," § 1395y(c). *See also* § 1395y(f) (requiring Secretary to establish guidelines as to whether payment may be made for certain expenses "under part A or part B of this subchapter").

> **This language makes clear that "subchapter" refers to the Medicare Act as a whole. Since the MSP Act and its private cause of action provision do not attach any narrowing language to "payments made under this subchapter," that phrase applies to payments made under Part C as well as those made under Parts A and B. Accordingly, that language cannot be read to exclude MAOs from the ambit of the private cause of action provision.**

*Id.* at 359-360 (emphasis added).

The court went on to find that, even if the statute were deemed ambiguous on this point, "deference to CMS regulations would require us to find that MAOs have the same right to recover as the Medicare Trust Fund does." *Id.* at 357. The court noted that CMS regulations expressly provide

that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108. The court found that "[t]he plain language of this regulation suggests that the Medicare Act treats MAOs the same way it treats the Medicare Trust Fund for purposes of recovery from any primary payer." *Id.* at 366. In this circumstance, the court concluded, "we are bound to defer to the duly-promulgated regulation of CMS." *Id.*

The Eleventh Circuit reached the same conclusion several years later in *Humana Medical Plan, Inc. v. Western Heritage Insurance Co.*, 832 F.3d 1229 (11th Cir. 2016). In finding that §1395y(b)(3)(A) provides a private right of action for MAOs, the court rejected the defendant's argument that MAOs are restricted to the right-to-charge provision § 1395w-22(a)(4), rather than the private right of action provided in § 1395y(b)(3)(A):

> Western suggests that the MSP does not govern MAOs at all and that the MAO right-to-charge provision [i.e., § 1395w-22(a)(4)] instead governs when and whether an MAO is a secondary payer. According to Western, because an MAO derives secondary payer status from [§ 1395w-22(a)(4)] rather than the MSP, an MAO may not sue under the MSP private cause of action.
>
> We reject Western's reading as contrary to the plain language of the pertinent provisions. First, paragraph (2)(A) unambiguously refers to all Medicare payments, which include both traditional Medicare and Medicare Advantage plans. *See In re Avandia*, 685 F.3d at 360; 42 U.S.C. § 1395y(b)(2)(A) (regulating "[p]ayment under this subchapter"). Second, [§ 1395w-22(a)(4)] parenthetically refers to circumstances under which MAO payments are "made secondary pursuant to section 1395y(b)(2)." 42 U.S.C. § 1395w-22(a)(4) (emphasis added). A plain reading of paragraph (2)(A) and [§ 1395w-22(a)(4)] therefore reveals that MAO payments are made secondary to primary payments pursuant to the MSP, not [§ 1395w-22(a)(4)]. This alone suggests that the MSP does not limit the cause of action in paragraph (3)(A) to cases in which traditional Medicare is the secondary payer.

*Id.* at 1237.  The court also rejected the defendant's argument (also raised by Defendant Phoenix herein) that § 1395y(b)(3)(A) is limited to situations where the secondary payer is the Secretary, rather than the MAO:

> The fact that paragraph (2)(B), the sole exception to paragraph (2)(A), refers to the Secretary does not alter our analysis. *See id.* § 1395y(b)(2)(B) (authorizing the Secretary to make conditional payment when a primary plan "has not made or cannot reasonably be expected to make [prompt] payment"). Even if paragraph (2)(B) does not apply to MAOs, [fn omitted] neither paragraph (2)(A) nor paragraph (3)(A) contain the limiting language found in paragraph (2)(B). Paragraph (2)(A) establishes secondary payer status for all Medicare and defines "primary plan" with reference to pre-existing obligations. Thus, a primary plan that fails to make primary payment has failed to do so "in accordance with paragraphs (1) and (2)(A)," regardless of whether the secondary payer is the Secretary or an MAO. *Id.* § 1395y(b)(3)(A).

*Id.* at 1237-1238.  Thus, the court found that there was "no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations."  *Id.* at 1238.  Therefore, it concluded "an MAO may avail itself of the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the MAO's secondary payment."  *Id.*

As Plaintiffs correctly note, numerous district courts (including several within the Sixth Circuit) have agreed with the reasoning set forth in *In re Avandia* and *Western Heritage* to find that §13957(b)(3)(A) provides a private right of action for MAOs.  *See, e.g., MSP Recovery Claims, Series LLC v. Progressive Corporation*, 2019 WL 5448356 (N.D. Ohio Sept. 17, 2019); *Humana Inc. v. Medtronic Sofamor Danek USA, Inc.*, 133 F.Supp.3d 1068, 1078 (W.D. Tenn. 2015); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co*., 2015 WL 5449221 (E.D. Tenn. Sept. 1, 2015); *Humana Insurance Co. v. Paris Blank LLP*, 187 F.Supp.3d 676 (E.D. Va. 2016); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F.Supp.3d 653 (E.D. La. 2014).

For the following reasons, and after careful review of the authority cited by both parties, the Court finds that Plaintiffs may pursue a private right of action against Defendant herein under §1395y(b)(3)(A). The Sixth Circuit's decisions in *Bio-Medical* and *Michigan Spine* are not directly on point because the Sixth Circuit did not consider, in either of those cases, whether a private cause of action may be maintained by a MAO under § 1395y(b)(3)(A). However, the Sixth Circuit did read § 1395y(b)(3)(A) broadly in *Michigan Spine* to provide such a right to health care providers as against non-group health plans. Moreover, the Court notes that, in so doing, the Sixth Circuit cited approvingly to *In re Avandia. See Michigan Spine,* 758 F.3d at 793. As discussed at length above, in *In re Avandia*, the Third Circuit explicitly recognized a private right of action for MAOs under §1395y(b)(3)(A), rejecting many of the same arguments raised by Defendant herein.

The Court finds the reasoning in *In re Avandia* (and *Western Heritage,* which reached the same conclusion) to be persuasive. The Court agrees with those courts that the language of §1395y(b)(3)(A) is broadly worded and does not include any language limiting the types of private parties that can bring suit for double damages when a primary payer fails to appropriately reimburse a secondary payer. As the *In re Avandia* court noted, at the time the MSP Act was passed in 1980, "Congress was certainly aware that private health plans might be interested private parties when it drafted the [private] cause of action, and it did not exclude them from that provision's ambit." *In re Avandia*, 685 F.3d at 367. Defendant has not offered any compelling reason for reading such a limitation into the statute.[8]

---

[8] In particular, the Court rejects Defendant's argument that the phrase "in accordance with paragraphs (1) and (2)(A)" limits application of §1395y(b)(3)(A) only to where payments are made by the Secretary. As set forth *supra*, Subparagraph (2)(A) provides that Medicare may not pay when a primary plan is expected to pay, "except as provided in subparagraph [2](B)," which in turn provides that when the primary plan "has not or cannot reasonably be expected" to pay "promptly," "the Secretary" may make a conditional payment. *See* 42 U.S.C. §§ 1395y(b)(2)(A) and (B). As noted

The Court also rejects Defendant's argument that allowing MAOs a private right of action under § 1395y(b)(3)(A) provides no benefit to the government. (Doc. No. 12 at p. 14.) As the Third Circuit noted in *In re Avandia*, "[i]f an MA plan provides CMS with a bid to cover Medicare-eligible individuals for an amount less than the benchmark calculated by CMS, it must use seventy-five percent of that savings to provide additional benefits to its enrollees." *In re Avandia*, 685 F.3d at 365 (citing 42 U.S.C. §§ 1395w–24(b)(1)(C)(i), (b)(3)(C), and (b)(4)(C)). "The remaining twenty-five percent of the savings is retained by the Medicare Trust Fund." *Id*. Therefore, "when MAOs spend less on providing coverage for their enrollees, as they will if they recover efficiently from primary payers, the Medicare Trust Fund does achieve cost savings." *Id*. Additionally, "when, by recovering from primary payers, MAOs save money, that savings results in additional benefits to enrollees not covered by traditional Medicare." *Id*. Thus, "ensuring that MAOs can recover from primary payers efficiently with a private cause of action for double damages does indeed advance the goals of the MA program." *Id*.

Furthermore, the Court finds Defendant's reliance on *Engstrom, supra* to be misplaced. In *Engstrom*, the Sixth Circuit considered the argument of Care Choices, a Medicare-substitute HMO, that § 1395mm(e)(4) provided an implied federal private right of action that allowed it to recover the

---

in both *In re Avandia* and *Western Heritage*, the secondary payer scheme established by § 1395y(b)(2)(A) applies to "[p]ayment under this subchapter." 42 U.S.C. § 1395y(b)(2)(A). Courts have found that the term "subchapter" in this instance refers to the entire Medicare Statute, including Part C governing MAOs. *In re Avandia*, 658 F.3d at 360. *See also Western Heritage*, 832 F.3d at 1237 ("[P]aragraph (2)(A) unambiguously refers to all Medicare payments, which includes both traditional Medicare and Medicare Advantage Plans."); *Cariten Health Plan*, 2015 WL 5449221 at * 7. Further, the MAO provision set forth in § 1395w-22(a)(4) refers to circumstances under which MAO payments are "made secondary pursuant to section 1395y(b)(2)." 42 U.S.C. § 1395w-22(a)(4). As the court explained in *Western Heritage, supra*, "[a] plain reading of paragraph (2)(A) and [§ 1395w-22(a)(4)], therefore reveals that MAO payments are made secondary to primary payments pursuant to the MSP, not [§ 1395w-22(a)(4)]. This alone suggests that the MSP does not limit the cause of action in paragraph (3)(A) to cases in which traditional Medicare is the secondary payer." *Western Heritage*, 832 F.3d at 1237. *See also Cariten*, 2015 WL 5449221 at * 7.

cost of an insured's medical expenses, where the participant had collected damages from the tortfeasor who had injured her. *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir.2003). The court declined to find an implied private right of action under § 1395mm(e)(4). In so doing, it compared the language of the MSP Act private cause of action provision with § 1395mm(e)(4), noting that §1395y(b) uses mandatory language to create a federal right of action whereas § 1395mm(e)(4) does not. *Id.* at 790. The Sixth Circuit did not consider, however, whether Care Choices could have brought suit under § 1395y(b)(3)(A). Indeed, the court noted that "the express remedy provided to Medicare was created in a different statutory provision, in a different bill, passed by a different Congress." *Id.* Thus, the Court finds the Sixth Circuit's decision in that case did not address the issue presented herein and is not directly applicable.[9]

Finally, the Court finds that, even if the language of § 1395y(b)(3)(A) is ambiguous with respect to the specific issue presented herein, *Chevron* deference would lead to the conclusion that MAOs possess a private right of action under that statute. *See Michigan Spine & Brain Surgeons,* 758 F.3d at 792 ("When statutory text is unclear, courts afford deference to and seek guidance from agency regulations.") In *Chevron*, the Supreme Court established a two-part test for determining when a federal court ought to defer to the interpretation of a statute embodied in a regulation formally enacted by the federal agency charged with implementing that statute. *Chevron*, 467 U.S. at 842–844. First, the court must determine whether Congress's intent on the issue is clear—if so, it must

---

[9] The Ninth Circuit's decision in *Parra, supra*, is distinguishable for the same reason. In *Parra*, the Ninth Circuit concluded that § 1395ww-22(a)(4) does not create an implied federal right of action. *Parra*, 715 F.3d at 1153. Rather, that statute "simply describes when MAO coverage is secondary to other insurance, and permits (but does not require) a MAO to include in its plan provisions allowing recovery against a primary plan." *Id.* Here, Plaintiffs do not argue that they have a private right of action (implied or otherwise) under § 1395ww-22(a)(4), instead pleading their sole claim under §1395y(b)(3)(A). Accordingly, *Parra* does not address, and is not relevant to, the issue presented herein.

abide by that intention, regardless of any regulations. If the statute is unclear, that is, "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. Courts defer to the agency's regulations "unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844.

Here, it is undisputed that CMS has the congressional authority to promulgate regulations interpreting and implementing Medicare-related statutes. *See also* 42 U.S.C. § 1395hh(a)(1) ("The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter."); 42 U.S.C. § 1395w–26(b)(1) ("The Secretary shall establish by regulation [ ] standards ... for [MA] organizations and plans consistent with, and to carry out, this part."). CMS regulations state that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). As the Third Circuit noted in *In re Avandia*, "[t]he plain language of this regulation suggests that the Medicare Act treats MAOs the same way it treats the Medicare Trust Fund for purposes of recovery from any primary payer." *In re Avandia*, 685 F.3d at 366. Thus, even if the Court were to find §1395y(b)(3)(A) to be ambiguous, the application of *Chevron* deference to this regulation results in the conclusion that MAOs are able to exercise the same secondary payment recovery rights against primary plans as Medicare.

Accordingly, and for all the reasons set forth above, the Court finds that MAOs have a private right of action against primary plans under § 1395y(b)(3)(A). Defendant's argument to the contrary is without merit and rejected.

     **2.**      **Failure to allege facts showing that a Conditional Payment has not been reimbursed**

Defendant argues that the Complaint should be dismissed because "Plaintiffs fail to allege facts showing an actionable conditional payment for five reasons." (Doc. No. 7 at p. 16.) First, Defendant maintains that Plaintiffs have improperly failed to allege a private contract that provides the basis for a conditional payment. (*Id*.) Second, Defendant argues that dismissal is warranted because the Plaintiffs have failed to allege specific facts regarding either the conditional payments that were allegedly made, or the contents of the settlement agreement with J.R. (*Id*.) Third, Defendant takes issue with the Complaint's allegation that Phoenix's alleged reports to Medicare constitute an "admission of responsibility." (*Id.*) Fourth, Defendant argues that Plaintiffs have improperly failed to allege any facts demonstrating that the conditional payments that were allegedly made were "reasonable and necessary." (*Id*. at p. 18.) Finally, citing arguments made by counsel for MSP Recovery Claims, Series LLC in an entirely different action, Defendant argues that "even if SummaCare at some point made conditional payments, according to Plaintiff's own arguments the logical inference the Court must draw is that those payments have already been reimbursed and it has no claim." (*Id*.)

With regard to Defendant's first argument, Plaintiffs maintain that the MSP Act does not limit the recovery of conditional payments to situations where the basis for recovery is derived from a private contract and, thus, Plaintiffs were not required to plead the existence of such a contract in the Complaint. The Court agrees. Defendant cites no authority for the proposition that, in order to pursue a private right of action under § 1395y(b)(3)(A), a plaintiff is required to plead the existence of a private contract pursuant to § 1395w-22(a)(4). Section 1395w-22(a)(4) provides, as follows:

> Notwithstanding any other provision of law, [a MAO] may (in the case of the provision of items and services to an individual under a [MA] plan under circumstances in which payment under this subchapter is made secondary pursuant to

section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4). Defendant fails to point to any language in either the above provision, or in § 1395y(b)(3)(A) itself, that arguably imposes a requirement that Plaintiffs plead the existence of a private contract in order to pursue a private right of action to recover conditional payments under § 1395y(b)(3)(A).[10] The Court finds this argument to be without merit.

In its second argument, Defendant maintains that the Complaint should be dismissed because Plaintiffs fails to allege specific facts regarding (1) the amounts or dates of conditional payments made by SummaCare; and (2) the content of the settlement agreement between Phoenix and J.R., including the date of and parties to the settlement agreement, scope of claims covered, and the relationship between the conditional payment and the settlement agreement. Relatedly, in its fourth argument, Defendant argues that Plaintiffs have failed to allege specific facts supporting their allegation that the conditional payments made by SummaCare and/or Plaintiffs were "reasonable and necessary." Plaintiffs maintain that Defendant's arguments are without merit because this level of specificity is not required to withstand dismissal under Rule 12(b)(6).

---

[10] The Court notes that Defendant's entire argument on this issue consists of two sentences and does not contain a citation to, or discussion of, any relevant, supporting authority with respect to this alleged requirement to maintain an action under § 1395y(b)(3)(A). (Doc. No. 7 at p. 16.)

The Court agrees with Plaintiffs. Federal courts have held that, to sufficiently plead a claim under § 1395y(b)(3)(A), an MSPA plaintiff must allege: (1) the defendant's status as a primary plan for a claim covered by Medicare, (2) the defendant's failure to make the primary payment or appropriate reimbursement to the Medicare benefit provider, and (3) damages. *See Allstate Ins. Co*., 2019 WL 4305519 at * 4; *MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Ins. Co*., 2018 WL 3420796 at * 7 (C.D. Ill. July 13, 2018). *See also Humana*, 832 F.3d at 1239 (applying these elements in the summary judgment context).

The Court finds the Complaint sets forth sufficient factual allegations to state claims for relief under § 1395y(b)(3)(A). Plaintiffs allege that J.R. was enrolled in a Medicare Advantage plan that was issued and administered by MAO SummaCare. (Doc. No. 1 at ¶ 7.) Plaintiffs further allege that (1) J.R. suffered injuries as a result of an accident caused by a tortfeasor insured by Defendant Phoenix; and (2) received medical treatment and services for his/her accident-related injuries. (*Id*. at ¶¶ 8-9.) Indeed, Plaintiffs specifically allege the particular injuries sustained by J.R., as well as the medical items and services that were provided. (*Id*.) Plaintiffs even go so far as to attach documents to the Complaint that list the diagnosis codes, injuries, items and services relating to each of the enrollees' accident-related injuries. (Doc. No. 1-1.) Plaintiffs then allege that J.R.'s medical providers billed SummaCare for payment of the accident-related medical expenses, which SummaCare subsequently paid. (*Id*. at ¶ 10.) Plaintiffs allege that J.R. made a claim against Defendant's insured, which Defendant subsequently settled. (*Id*. at ¶ 11.) Plaintiffs allege that, by entering into this settlement agreement in exchange for a release of all claims, Defendant "became a primary payer and subject to liability for J.R.'s accident-related medical expenses." (*Id*.) Finally,

Plaintiffs allege that, despite being a primary payer, Defendant has refused to reimburse Plaintiffs for J.R.'s medical expenses. (*Id*. at ¶ 12.)

The Court finds these allegations to be sufficient to withstand dismissal. The level of particularity demanded by Defendant is simply not required at the pleading stage, as many courts have found under similar circumstances.[11] *See, e.g., MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2018 WL 2106467 at * 10 (C.D. Cal. May 7, 2018); *MSPA Claims 1, LLC v. Allstate Ins. Co.*, 2019 WL 4305519 at * 4-5 (N.D. Ill. Sept. 11, 2019). *See also MAO-MSO Recovery II, LLC v. Mercury General*, 2018 WL 3357493 at * 8 (C.D. Cal. May 23, 2018) ("Here, Plaintiffs have alleged that Defendant's no-fault insurance contracts render Defendant responsible for primary payment of the expenses Plaintiffs seek to recover. These allegations are sufficient to demonstrate responsibility at the pleading stage."). As another district court aptly explained when rejecting a similar argument:

> The level of factual particularity demanded by GEICO at the initial pleading stage of these suits is eye-popping. It all but insists that Plaintiffs actually *prove*, rather than simply *plead*, their claims. This far exceeds the language of Fed. R. Civ. P. 8, and even the more demanding . . . standards of *Iqbal* and *Twombly* do not require a plaintiff to plead all the evidentiary facts needed to support its claims. The amended complaints contain a level of specificity that is sufficient for the Court 'to draw the reasonable inference' that the MAOs made payments of medical supplies and services that GEICO, as the primary payer, was obligated to cover; that GEICO made payments on behalf of its insureds pursuant to settlement agreements; and that GEICO failed to pay

---

[11] Defendant's reliance on *MAO-MSO Recovery II, LLC v. Nationwide Mutual Ins. Co.,* 2018 WL 4941111 (S.D. Oh. Feb. 28, 2018) is misplaced. In that case, the court dismissed the MSP plaintiffs' complaint because it provided "no information about the assignors, including the identity of the assignors (other than one representative assignor that is redacted), the dates of the assignments, or the specific language included in the assignments." *Id*. at * 3. In addition, the court noted that the complaints in that case pled claims that involved "unspecified Medicare beneficiaries" with unspecified injuries that "caused Plaintiffs and putative class members to pay for unspecified medical services." *Id*. at * 2. As noted above, the Complaint in the instant case contains considerably more detailed factual allegations that those at issue in *Nationwide, supra*. For similar reasons, the Court finds *United States ex rel. Takemoto v. Nationwide Mutual Ins. Co.*, 674 Fed. Appx. 92 (2nd Cir. 2017) to be distinguishable. In that case, the court upheld the dismissal of a complaint because it was based solely on "speculat[ion] that each defendant had one or more reimbursement obligations under the MSPA based on the facts that approximately 17% of the population are Medicare beneficiaries and that defendants issue settlements, judgments, or awards for "tens of thousands of claims involving Medicare beneficiaries" each year." *Id*. at *1. As set forth above, the Complaint herein contains much greater factual detail regarding the basis for Plaintiffs' alleged conditional payments and Defendant's reimbursement obligations.

or reimburse the MAOs, such that GEICO 'is liable for the misconduct alleged.' *Iqbal*, 556 U.S. at 678. \* \* \* Plaintiffs have stated claims on all counts, and GEICO's motions to dismiss are denied.

*MAO-MSO Recovery II, LLC v. Government Employees Ins. Co.*, 2018 WL 999920 at \* 12 (D. Md. Feb. 21, 2018) (emphasis in original).   Accordingly, this argument in support of Defendant's Motion to Dismiss is without merit and denied.

Defendant's next argument is that the Complaint improperly characterizes Defendant's submission of reports to CMS as an "admission of responsibility."  (Doc. No. 7 at p. 17-18.) The Court need not reach this issue, however, as Defendant does not explain how the resolution of this issue would result in a finding that the Complaint fails to state a claim upon which relief may be granted.   At best, Defendant's argument is simply a disagreement with a statement made in the Complaint.   Defendant has not argued or demonstrated that Plaintiffs' allegations regarding Defendant's CMS reports amount to a pleading deficiency warranting dismissal under Rule 12(b)(6).

Finally, the Court rejects Defendant's argument that this Court should draw a "logical inference" from statements made by counsel for MSP Recovery Claims, Series LLC in another action, that Plaintiffs herein have already been reimbursed and have no claim.  (Doc. No. 7 at pp. 18-19.) The Court rejects this argument.  Statements made by counsel in another action regarding a different issue do not constitute evidence that Plaintiffs have received reimbursement in the instant action for conditional payments under the MSPA.  As Plaintiffs correctly note, at this stage of the proceedings, the Court must view the allegations in the Complaint in a light most favorable to Plaintiffs.  *See Iqbal*, 556 U.S. at 629.   Here, Plaintiffs have adequately alleged that SummaCare made conditional Medicare payments for medical expenses incurred by its enrollees resulting from injuries sustained in accidents with Defendant's insureds.  Plaintiffs further allege that Defendant is a primary payer

and that it has failed to reimburse SummaCare and/or Plaintiffs for these conditional payments. As set forth above, the Court finds the Complaint sets forth sufficient factual allegations to state claims for relief under § 1395y(b)(3)(A).

Accordingly, Defendant's arguments to the contrary are without merit and denied.

### 3. Three-Year Presentment

In its final assignment of error, Defendant argues that Plaintiffs are required to plead that Defendant knowingly failed to reimburse a conditional payment. (Doc. No. 7 at p. 19.) Specifically, Defendant argues that the MSP Act "requires the government to, as a prerequisite for seeking to recover conditional payments from a primary payer, make a request for payment to the primary payer within three years from the date on which the item or services were furnished." (*Id.*) Defendant maintains that the Complaint should be dismissed because "Plaintiffs never even mention a demand letter and therefore do not satisfy this prerequisite to a lawsuit under the MSP Act." (*Id.*)

Plaintiffs argue that actual knowledge is not an element of a claim under § 1395y(b)(3)(A) and that a settlement alone is sufficient to demonstrate a liability insurer's payment responsibility. (Doc. No. 11 at p. 17-18.) Plaintiffs further argue that there is no "demand letter requirement" under the MSP Act. (*Id.* at p. 19-20.) Specifically, Plaintiffs maintain that the three-year presentment requirement set forth in § 1395y(b)(2)(B)(vi) "has no relationship to Medicare's effort to recover through litigation and is completely irrelevant to a private party's distinct right to recovery under § 1395y(b)(3)(A)." (*Id.*) Citing several federal district court decisions, Plaintiffs assert that "it is clear that a MAO is not required to ask the primary payer whether it will accept responsibility before filing a lawsuit." (*Id.* at p. 20.)

In its Reply Brief, Defendant argues, at some length, that the relevant statutory language does, in fact, impose a demand letter requirement on a Medicare entity seeking reimbursement for conditional payments.  (Doc. No. 12 at pp. 16-21.)

A review of the relevant statutory framework is necessary to understand the parties' arguments.  As has been set forth *supra,* § 1395y(b)(2)(B)(i)(entitled "Authority to make conditional payment") authorizes conditional payments when a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly."   42 U.S.C. § 1395y(b)(2)(B)(i).  Section 1395y(b)(2)(B)(iii) (entitled "Action by United States") then provides as follows:

> In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. **An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.**

42 U.S.C. § 1395y(b)(2)(B)(iii) (emphasis added).   The following section, § 1395y(b)(2)(B)(iv) (entitled "Subrogation rights") explains that "[t]he United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection

of an individual or any other entity to payment with respect to such item or service under a primary

plan." 42 U.S.C. § 1395y(b)(2)(B)(iv).

Defendants' argument is based on the next provision, § 1395y(b)(2)(B)(vi). This statute,

which is entitled "Claims-filing period," provides as follows:

> Notwithstanding any other time limits that may exist for filing a claim under an
> employer group health plan, the United States may seek to recover conditional
> payments in accordance with this subparagraph where the request for payment is
> submitted to the entity required or responsible under this subsection to pay with
> respect to the item or service (or any portion thereof) under a primary plan within the
> 3-year period beginning on the date on which the item or service was furnished.

42 U.S.C. § 1395y(b)(2)(B)(vi).

In reviewing questions of statutory interpretation, the Sixth Circuit employs a three-step

framework:

> [F]irst, a natural reading of the full text; second, the common-law meaning of the
> statutory terms; and finally, consideration of the statutory and legislative history for
> guidance. The natural reading of the full text requires that we examine the statute for
> its plain meaning, including the language and design of the statute as a whole. If the
> statutory language is not clear, we may examine the relevant legislative history.

*Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir.2010) (citations and internal quotation marks

omitted). *See also Hughes v. McCarthy*, 734 F.3d 473, 478 (6th Cir. 2013).

Based on a natural reading of the full text, the Court finds that § 1395y(b)(2)(B)(vi) does not

create a statutory presentment requirement as a pre-condition to filing suit pursuant to

§1395y(b)(3)(A).    The plain language of the opening clause of § 1395y(b)(2)(B)(vi)

("[n]otwithstanding any other time limits that may exist for filing a claim under an employer group

health plan") limits the application of that provision to claims against employer group health plans.

*See Progressive*, 2019 WL 5448356 at * 9.  This reading of the statute is consistent with its legislative

history, which explains that § 1395y(b)(2)(B)(vi) was intended to address time constraints associated

with the submission of claims in the context of employer group health plans:

> Section 4702. Clarification of time and filing limitations
>
> <u>Current Law</u>. In many cases where MSP recoveries are sought, claims have never been filed with the primary payer. **Identification of potential recoveries under the data match process typically takes several years–considerably in excess of the period many health plans allow for claims filing**. A 1994 appeals court decision held that HCFA could not recover overpayments without regard to an insurance plan's filing requirements.
>
> <u>Explanation of Provision</u>. The provision would specify that the U.S. could seek to recover payments if the request for payments was submitted to the entity required or responsible to pay within 3 years from the date the item or service was furnished. **This provision would apply notwithstanding any other claims filing time limits that may apply under an employer group health plan**. The provision would apply to items and services furnished after 1990. The provision should not be construed as permitting any waiver of the 3-year requirement in the case of items and services furnished more than 3 years before enactment.

H.R. REP. 105-149, 739 (emphasis added). The Court finds that the above language confirms that

the purpose of § 1395y(b)(2)(B)(vi) is, in fact, to expand the government's timeframe to pursue

claims where the primary payer is a group health plan with more restrictive claims filing

requirements. There is no indication, in either the statutory language itself or in the relevant

legislative history, that the intent was to restrict the government's ability to pursue claims by imposing

a mandatory presentment requirement.

In addition, the Court finds it significant that §1395y(b)(2)(B)(vi) does not contain mandatory

language but, rather, that section is written permissively to allow the United States to recover

conditional payments within a three-year period, regardless of whether an employer group health plan

sets forth a shorter period for asserting a claim. *See, e.g., Progressive*, 2019 WL 5448356 at * 9. On

its face, § 1395y(b)(2)(B)(vi) does not expressly require the United States to submit a request for

payment prior to filing suit pursuant to the direct right of recovery provision set forth in § 1395y(b)(2)(B)(iii).  *See, e.g., Progressive*, 2019 WL 5448356 at * 9.  Indeed, nothing in the plain language of § 1395y(b)(2)(B)(vi) addresses the circumstances under which either the United States or a private party may file suit to pursue a direct right of recovery of conditional payments.  *See MSPA Claims 1, LLC v. Bayfront HMA Medical Center, LLC*, 2018 WL 1400465 at * 6 (S. D. Fla. March 20, 2018) (noting that § 1395y(b)(2)(B)(vi) "does not contemplate litigation."); *MSPA Recovery Claims, Series LLC v. AIX Specialty Ins. Co.*, 2019 WL 2211092 at * 4 (M.D. Fla. May 22, 2019) (same).  Rather, that issue is squarely addressed in § 1395y(b)(2)(B)(iii), which contains mandatory language providing that "[a]n action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, [or] award . . ."  This limitation provision is contained in the specific section of the statute relating to bringing suit to enforce obligations under the MSPA and provides a clear mandate regarding the time period for initiating litigation.

The majority of district courts to consider this issue have reached the conclusion that the specific limitation period set forth in § 1395y(b)(2)(B)(iii) pertaining to bringing suits to recover conditional payments governs over the claims-filing provision set forth in § 1395y(b)(2)(B)(vi).  *See Progressive*, 2019 WL 5448356 at * 9; *Bayfront HMA Medical Center, LLC*, 2018 WL 1400465 at * 6; *AIX Specialty Ins. Co.*, 2019 WL 2211092 at * 4.[12]  For all of the reasons set forth above, this Court agrees and, thus, rejects Defendant's argument that the Complaint should be dismissed because

---

[12] The Court recognizes that at least one district court has reached a different conclusion.  *See MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 361 F.Supp.3d 1270 (S.D. Fla. 2018).  This Court respectfully disagrees with *Kingsway*, particularly in light of the legislative history noted above, which was not discussed in that decision.

Plaintiffs failed to allege that SummaCare or Plaintiffs sent conditional payment letters to Defendant within the three-year presentment period set forth in § 1395y(b)(2)(B)(vi).[13]

## V.     Conclusion

For all the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 7) is GRANTED IN PART and DENIED IN PART, as follows.  Defendant's Motion is granted to the extent it seeks dismissal of Plaintiff MSP Recovery Claims, Series LLC for lack of standing.  Defendant's Motion is denied in all other respects.

**IT IS SO ORDERED.**


                                                    _s/Pamela A. Barker_____
                                                    PAMELA A. BARKER
Date:  December 12, 2019                            U. S. DISTRICT JUDGE

---

[13] The Court notes that Defendant has not moved for dismissal on the grounds that Plaintiffs' claims are barred by the three-year limitations period set forth in § 1395y(b)(2)(B)(iii).  Thus, the Court does not address that issue herein.